UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOURDES OLIVO, | CASE NO.: 17-cv-02153-L-WVG |
| Plaintiff, | |
| v. | **ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT** |
| FRESH HARVEST, INC. *et al.*, | |
| Defendants. | |

Pending before the Court in this action for violation of California and federal labor laws is Joint Motion for Approval of Amended Settlement Agreement pursuant to California Labor Code § 2699(l)(2). (Doc. no. 75 ("Motion"); doc. no. 76 ("Amended Agreement").) For the reasons which follow, the Motion is granted.

**I.    BACKGROUND**

Plaintiff Lourdes Olivo was a seasonal hourly farmworker employed by Defendants to work in the lettuce fields in the Imperial Valley and in the vicinity of Yuma, Arizona. (Doc. no. 21-1; *see also* doc. no. 22.) During the harvesting season, she was given work on a daily basis. Along with her co-workers, she was required to report at a fixed location in or around Calexico to take a crew bus to the work site for the day. Plaintiff claims the crew bus was operated by Defendants, and that the workers were not paid for the travel time, or for the time they spent

waiting with the bus en route for the forepersons to complete necessary banking or other errands on behalf of Defendants, waiting for the frost or dew to dissipate in the morning, waiting for the forepersons to complete their duties on site before the work could begin and at the end of the day, and waiting for the bus for the return trip.

In addition to the wages and hours claims, Plaintiff alleges wrongful termination. She claims she was interviewed for an internal company investigation and truthfully responded that the forewoman did not allow the crew to take mandatory scheduled breaks. Shortly thereafter, the forewoman was removed and replaced by her husband, who demoted Plaintiff from the position of foreperson's assistant, which she had held for the previous fifteen years. Plaintiff was not re-hired the following season. She claims she was demoted and not re-hired because of her cooperation in the internal investigation. Plaintiff also maintains that she and other workers were unlawfully replaced by temporary foreign workers.

Plaintiff alleges failure to pay minimum wages, failure to pay overtime wages, failure to pay contractual wages due, failure to furnish accurate wage statements, failure to timely pay all wages due upon termination, and adverse employment action in violation of California public policy. She also alleges that Defendants violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 *et seq.*, and the Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§1831-1854. She brings this action individually as well as pursuant to the Labor Code California Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*, on behalf of Other Aggrieved Employees, defined as

> approximately 582 individuals who performed work as romaine lettuce harvesters or packers for Defendant Fresh Harvest between February 14, 2016 and the end of the 2017-18 lettuce harvest season and were transported on buses or vans owned or operated by Defendant Fresh Harvest, from Calexico to various locations in the Imperial Valley and Yuma, Arizona vicinity.

- 2 -

(Doc. no. 76 at 8.)[1] Plaintiff seeks damages, penalties, restitution, and other relief. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 over the AWPA claim, and supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the related state law claims.

Defendants dispute Plaintiff's claims on multiple bases, including merits and statute of limitations. The strengths and weaknesses of Plaintiff's claims and Defendants' defenses are discussed in the Motion, and the discussion is incorporated herein by reference. (Doc. no. 75-1 at 9-14, 22-24; doc. no. 75-2 at 6-13.) After conducting extensive discovery and investigation, the parties settled with the assistance of Magistrate Judge Gallo. (Doc. no. 75-1 at 14-16.)

The parties filed a joint motion for approval of settlement. The Court initially required supplemental briefing (doc. no. 72) because of inconsistencies between the settlement agreement and distribution plan, and between the notice of settlement and the claim form. Although Plaintiff timely filed a supplemental brief and counsel's declaration (doc. no. 73), material discrepancies remained. Accordingly, the initial motion for settlement approval was denied without prejudice. (Doc. no. 74.) The parties subsequently amended the settlement agreement and filed the pending motion. (Docs no. 75, 76.)

## II. TERMS OF THE PROPOSED SETTLEMENT

### A. Monetary Terms

Defendants are to pay $1 million into a non-reversionary settlement fund to be distributed according to a plan of distribution (doc. no. 76 at 16-20) as follows:

1. Payment to Simpluris, Inc. of $11,000 for claim administration. If actual claim administration expenses exceed $11,000, the claim administrator may receive up to $15,000 based on an itemized accounting.

/ / / / /

---

[1] Page numbers are assigned by the Electronic Case Filing System.

2. Payment to Plaintiff within ten business days of settlement approval in the sum of $45,000 for her underpaid wages, damages, penalties, and interest.

3. Payment to the California Labor and Workforce Development Agency ("LWDA") within ten business days of settlement approval of $41,250 for the LWDA's share of PAGA civil penalties, representing 75% of total PAGA civil penalties awarded under the settlement. *See* Cal. Lab. Code §2699(i) (allocating 75% of the penalties to the LWDA and 25% to the aggrieved employees).

4. Allocation of no less than $698,750 for pro rata payments to Other Aggrieved Employees who submit claims, of which $13,750 consists of the employees' total portion of PAGA civil penalties, and the remainder consists of their underpaid wages, liquidated damages, and waiting time penalties. The amount due each employee is calculated according to a formula in the distribution plan and pro rated based on the number of weeks the employee worked for Defendants. Payments to Other Aggrieved Employees are to be made in two installments: (1) $500 per employee within 30 days of verifying the employee's claim; and (2) the remaining portion at the end of the claims period.

5. Subject to Court approval, Plaintiff's attorneys are to receive up to $200,000 for fees and costs within ten business days of settlement approval. If the Court approves a higher sum, up to a total of $330,000, any excess over $200,000 is to be paid to the extent settlement funds remain available after payment to Other Aggrieved Employees.

6. Any remaining funds are to be deposited with the LWDA as additional civil penalties.

**B.  Releases**

The proposed settlement includes two release provisions, the Mutual Release in the body of the Amended Agreement, and the Release of Claims form for signature by each Other Aggrieved Employee who submits a claim. The Mutual Release applies only to the "Parties" (doc. no. 76 at 11-12), defined as "Plaintiff and

Defendants collectively" (*id.* at 6).  Nevertheless, Other Aggrieved Employees are "bound by the judgment in an action under the PAGA, but only with respect to recovery of civil penalties." *ZB, N.A. v. Super. Ct. (Lawson),* 8 Cal.5th 175, 196 (2019).  They "retain all rights 'to pursue or recover other remedies available under state or federal law, either separately or concurrently with' [the PAGA action.]" *Baumann v. Chase Inv. Servs. Corp.,* 747 F.3d 1117, 1123 (9th Cir. 2014) (quoting Cal. Lab. Code § 2699(g)(1)).

> This is because the PAGA authorizes a representative action only for the purpose of seeking civil penalties for Labor Code violations, and an action to recover civil penalties is fundamentally a law enforcement action, not one for the benefit of private parties.

*ZB,* 8 Cal.5th at 196-97 (internal quotation marks, brackets and citation omitted); *see also Sakkab v. Luxittica Retail N. Am., Inc.,* 803 F.3d 425, 435 (9th Cir. 2015) ("PAGA does not give absent employees any substantive right to bring their 'own' PAGA claims").

With regard to "rights to pursue other . . . remedies," *Baumann,* 747 F.3d at 1123, a Release of Claims must be signed by each Other Aggrieved Employee who submits a claim.  (Doc. no. 76 at 24.)  Accordingly, Other Aggrieved Employees who do not sign a Release of Claims remain free to pursue other remedies against Defendants.[2]

### C. <u>Notice</u>

Plaintiff has complied with the PAGA's notice requirement, Cal. Lab. Code § 2699(l)(2), by submitting the proposed settlement to the LWDA.  (*See* doc. no. 75-2 at 20, 139.)  The LWDA has not responded.

/ / / / /

---

[2] This is unlike a class action, where the "Federal Rules ensure that members of the class receiving notice and declining to opt out are bound by a judgment. Class action judgments are also preclusive as to all claims the class could have brought." *Baumann,* 747 F.3d at 1123 (citing Fed. R. Civ. Proc. 23(c)(3)).

- 5 -

With regard to Other Aggrieved Employees, the proposed settlement requires Defendants to provide the claim administrator with their names, addresses and payroll records. After verifying the contact information for Defendants' former employees, the claim administrator will send a notice packet by first class mail. The notice packet is to contain English and Spanish versions of the notice of settlement, claim form, an estimate of each employee's settlement payment, and a Release of Claims form. A skip trace or other search is to be performed for every returned notice packet, and the packet re-sent by first class mail to any updated addresses found.

The notice describes the nature of this action and includes an estimate of each employee's payment. (Doc. no. 76 at 22-23.) The estimate provides the maximum settlement amount for each employee for underpaid wages and liquidated damages, including the number of work weeks on which the estimate is based, and indicates that each employee would receive "an amount for waiting time penalties." (*Id.* at 23.) It also indicates that the actual amount received "will depend on how many claims are filed." (*Id.* at 22.) It further states that the distribution will be made in two payments, and that actual distribution may be less than estimated, but an initial payment of $500 to each employee who submits a claim is guaranteed. (*Id.* at 22-23.) If the employees have questions, the notice provides contact information for the claim administrator.

### D. Claim Submission and Payment

Other Aggrieved Employees have until one year and 30 days after the approval of the proposed settlement to submit their claims by providing one of several forms of identification, filling in the claim form and signing the Release of Claims. (Doc. no. 76 at 22.) Upon receipt of these documents, the claim administrator will verify each claim. If a claim is rejected, the claimant is to be referred to Plaintiff's counsel if he or she wishes to challenge the rejection. (*Id.* at 18.) If a claim is verified, the claim administrator will send the initial $500

payment by check or international electronic transfer, as instructed by the claimant, within 30 days of verifying the claim. (*Id.* at 19.) The remaining payments to Other Aggrieved Employees will be calculated pro rata according to the formula set forth in the distribution plan and disbursed at the end of the claim process. (*Id.*) If any settlement checks remain uncashed 60 days after issuance, the claim administrator will contact Plaintiff's counsel and make at least two attempts to contact the employee. If any settlement checks remain uncashed 180 days after the final pro rata distribution, each amount will be submitted the LWDA on behalf of the aggrieved employee for deposit into the Unpaid Wage Fund, where the employee can claim it. (*Id.* at 20.)

### III. EVALUATION OF THE PROPOSED SETTLEMENT

This action was filed as a PAGA representative action rather than as a class action under Rule 23 of Federal Rules of Civil Procedure. (Doc. no. 75-1 at 9 ("not a class action.").) "The PAGA . . . empowers employees to sue on behalf of themselves and other aggrieved employees to recover civil penalties previously recoverable only by the Labor Commissioner . . . ." *ZB,* 8 Cal.5th at 184-85.

> All PAGA claims are "representative" actions in the sense that they are brought on the state's behalf. The employee acts as the proxy or agent of the state's labor law enforcement agencies and represents the same legal right and interest as those agencies — namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency. The employee may therefore seek any civil penalties the state can, including penalties for violations involving employees other than the PAGA litigant herself.

*Id.* at 185 (internal citations and quotation marks omitted).

"Before bringing a civil action for statutory penalties, an employee must comply with Labor Code section 2699.3" by providing notice of the alleged violations and the factual basis for the claims to the employer and the LWDA. *ZB,* 8 Cal.5th at 185. If, as here, the LWDA does not wish to investigate or does not

/ / / / /

- 7 -

timely issue a citation, the employee may proceed with the action for civil penalties. *Id.*

Finally, the PAGA requires court review and approval of the proposed settlement. Cal. Lab. Code § 2699(l)(2). PAGA representative actions are not required to meet class action requirements, *Arias v. Super. Ct. (Angelo Dairy),* 46 Cal. 4th 969, 975 (2009), because of "fundamental differences" between class actions and PAGA representative actions, *Sakkab,* 803 F.3d at 435.

> The class action is a procedural device for resolving the claims of absent parties on a representative basis[, while] a PAGA action is a statutory action in which the penalties available are measured by the number of Labor Code violations committed by the employer. An employee bringing a PAGA action does so "as the proxy or agent of the state's labor law enforcement agencies." . . . [B]y obtaining such penalties, the employee-plaintiff does not vindicate absent employees' claims, for the PAGA does not give absent employees any substantive right to bring their "own" PAGA claims. . . .
>
> Because a PAGA action is a statutory action for penalties brought as a proxy for the state, rather than a procedure for resolving the claims of other employees, there is no need to protect absent employees' due process rights . . ..

*Id.* at 435-36 (quoting *Iskanian v. CLS Transp. Los Angeles, LLC,* 59 Cal. 4th 348, 380 (2014)).

Plaintiff does not cite (*see* doc. no. 75-1 at 18), and the Court is not aware of any binding legal authority defining the standard of review for settlements of PAGA representative actions. Accordingly, to the extent the parties are settling the PAGA claim for civil penalties, the Court reviews the proposed settlement in view of the purposes and policies of the statute. *See O'Connor v. Uber Techs., Inc.,* 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016).

A relatively small portion of the proposed settlement is allocated to the LWDA for PAGA civil penalties ($55,000 out of $1 million). (*See* doc. no. 76 at 10.) However, the amount may be increased, if the total claims submitted do not

- 8 -

exceed the total allocated amount for Other Aggrieved Employees' claims after paying all attorneys' fees and costs approved by the Court. (Doc. no. 76 at 9, 20.)

Even if the LWDA payment is ultimately not increased, the monetary terms of the proposed settlement accomplish the PAGA's goals. The PAGA was enacted to ensure enforcement of labor laws in the absence of sufficient resources for enforcement by government agencies and to deter future violations by means of significant civil penalties. *See Iskanian,* 59 Cal.4th at 379. The proposed settlement accomplishes these goals by enforcing the laws and providing for a sufficient payment from Defendants to deter future violations, or alternatively, by providing sufficient compensation to Other Aggrieved Employees to motivate them to enforce any future violations.[3] *See ZB,* 8 Cal.5th at 197 (award of underpaid wages may be viewed as serving a "compliance function").

Finally, the LWDA had an opportunity but chose not to weigh in on the proposed settlement. Accordingly, the Court finds that the proposed settlement of the PAGA claim for civil penalties, including allocation of funds to the LWDA, is reasonable.

However, aside from Plaintiff's individual recovery and PAGA civil penalties, the proposed settlement includes individual relief to Other Aggrieved Employees. The PAGA "authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code violations, and an action to recover civil penalties is fundamentally a law enforcement action designed to protect the public

---

[3] The monetary terms of the proposed settlement are modest, representing approximately 9% of the potential amount due Other Aggrieved Employees for underpaid wages alone. (Doc. no. 75-2 at 12.) However, in light of Defendants' asserted defenses, difficulties of proof, the delay, expense and uncertainty inherent in trial and collection of any judgment, the proposed settlement is reasonable. (*See id.* at 5-13.) Furthermore, the minimum guaranteed payment of $500 to each Other Aggrieved Employee is likely sufficient to accomplish this goal.

- 9 -

17-cv-02153-L-WVG

and not to benefit private parties." *Arias*, 46 Cal.4th at 986 (internal quotation marks and citations omitted). A PAGA representative action therefore does not vindicate Other Aggrieved Employees' "victim-specific relief." *ZB,* 8 Cal.5th at 188. The proposed settlement, however, includes such relief by proposing to settle Other Aggrieved Employees' claims for underpaid wages, liquidated damages, and waiting time penalties under California Labor Code Sections 558 and 1197.1. (*See* doc. no. 76 at 19.) Contrary to the parties' contention that these claims are properly included in a PAGA representative action (doc. no. 75-1 at 25), this is not the case.[4] *ZB*, 8 Cal.5th at 198.

"[A] PAGA claim does not include unpaid wages under section 558." *ZB*, 8 Cal.5th at 198. Neither California Supreme Court nor appellate courts have had the occasion to address liquidated damages and waiting time penalties under section 1197.1 in light of *ZB, N.A. v. Superior Court*. In the absence of state supreme court or appellate court authority, the Court must determine the most likely result that would be reached by the state supreme court. *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1391 (9th Cir. 1994). For the reasons articulated with regard to underpaid wages under section 558, *see ZB*, 8 Cal.5th at 190-93, it is most likely that California Supreme Court would find that liquidated damages and waiting time penalties under section 1197.1 cannot be recovered on behalf of other aggrieved employees as civil penalties in a PAGA representative action.

Accordingly, claims for underpaid wages, liquidated damages and waiting time penalties on behalf of Other Aggrieved Employees are outside the scope of a PAGA representative action.[5] *See ZB*, 8 Cal.5th at 198. The same relief, however,

---

[4] *Thurman v. Bayshore Transit Mgt, Inc.,* 203 Cal. App. 4th 1112 (2012), on which the parties rely for this proposition, has been overruled. *ZB,* 8 Cal.5th at 196 n.8.

[5] Should California Supreme Court ultimately reach the contrary conclusion with respect to liquidated damages and waiting time penalties, the effect on this

could have been secured by the California Labor Commissioner under sections 558 and 1197.1 on behalf of Other Aggrieved Employees or by Other Aggrieved Employees themselves through a civil action under section 1194. *Id.* at 186. Rather than rejecting the proposed settlement to the extent it provides for "victim-specific relief," *ZB*, 8 Cal.5th at 188, the Court construes it as an offer to each Other Aggrieved Employee to settle his or her individual claims, which each employee can individually accept by filing a claim and singing a Release of Claims, or reject by not responding.

The parties do not cite, and the Court is not aware of any legal authority requiring court approval of individual offers of settlement.[6] For the foregoing reasons, the joint motion for approval of the Amended Agreement is granted.

## IV.     ATTORNEYS' FEES AND COSTS

Plaintiff's attorneys request approval of $291,171.61 for their fees and $38,828.39 for costs. For the reasons stated below, the request is granted.

### 1.     **Attorneys' Fees**

The PAGA provides for payment of reasonable attorneys' fees and costs to a prevailing plaintiff. Cal. Lab. Code § 2699(g)(1). To the extent the proposed settlement constitutes an offer of settlement to Other Aggrieved Employees, reasonable attorneys' fees and costs are authorized by California Labor Code Section 1194.

California law applies to the calculation of reasonable attorneys' fees

---

ruling would not be material, because it is clearly established that underpaid wages cannot be recovered on behalf of other aggrieved employees in a PAGA representative action. *ZB*, 8 Cal.5th at 198. At least to the extent the proposed settlement seeks to resolve Other Aggrieved Employees' claims for underpaid wages, they are outside the permissible scope of Plaintiff's PAGA claim. *See id.*

[6]     Because the proposed settlement does not bind Other Aggrieved Employees unless they sign a Release of Claims, it does not run afoul of due process. *See, e.g., Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 363-64 (2011).

- 11 -

awarded under state law. *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.,* 197 F.3d 1276, 1282 (9th Cir. 1999); *see also Mangold v. Cal. Pub. Util. Comm'n,* 67 F.3d 1470, 1478 (9th Cir. 1995). "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group v. Drexler,* 22 Cal.4th 1084, 1095 (2000). Plaintiff claims her lodestar is $389,444.13, and requests $291,171.61. (Doc. no. 75-1 at 30.)

Cynthia Rice of the California Rural Legal Assistance, Inc. ("CLRA"), represented Plaintiff from the inception of the case. She was admitted to practice in 1979 and has specialized in labor and employment matters throughout her career. (Doc. no. 75-2 at 3.) She billed her time at the rate of $650 per hour, except for a small fraction, which she billed at the rate of $250 per hour. (Doc. no. 75-1 at 22.)

The other senior attorneys on this case are Mario Martinez and Thomas P. Lynch of Martinez Aguilasocho & Lynch ("MAL"). Mr. Lynch was admitted in 1992, and Mr. Martinez in 1999. (Doc. no. 75-3 at 4-5.) Both have significant experience representing farm workers. They each billed their time at the rate of $500 per hour. (Doc. no. 75-1 at 30.)

Three associate-level attorneys worked on this case: Ron Melton of CLRA, and Anna Walther and Margaret Serrano of MAL. Mr. Melton was admitted in 2017 and his billing rate is $275 per hour. (Doc. no. 75-2 at 16, doc. no. 75-1 at 30.) Ms. Walther was admitted in 2012 and Ms. Serrano in 2014. (Doc. no. 75-2 at 2, 5.) Their time was billed at $250 per hour.[7] (Doc. no. 75-1 at 30.)

"The reasonable hourly rate is that prevailing in the community for similar work." *PLCM Group,* 22 Cal.4th at 1095. The relevant local community is the community where the court is located rather than the local community of out-of-

---

[7] Ms. Walther's billing rate was reduced from her normal rate of $300 per hour. (Doc. no. 75-3 at 8.)

- 12 -

town counsel. *Nichols v. City of Taft*, 155 Cal.App.4th 1233, 1242-43 (2007); *Rey v. Madera Unif. Sch. Dist.*, 203 Cal. App. 4th 1223, 1241 (2012); *Ctr for Biological Diversity v. County of San Bernardino*, 188 Cal. App. 4th 603, 617-19 (2010). Based on the information provided regarding the attorneys' respective experience and billing rates in this District, the attorney hourly rates are reasonable.

Plaintiff also seeks to recover paralegal fees. Paralegal fees may be recovered as attorneys' fees. *Gorman v. Tessajara Dev. Corp.*, 178 Cal. App. 4th 44, 92 (2009); *Guinn v. Dotson*, 23 Cal. App. 4th 262, 268-69 (1994). Three paralegals worked on this case. Emanuel Benitez of CLRA and Aida Sotelo and Brenda Rizo of MAL. (*Id.*) Ms. Sotelo and Ms. Rizo each billed at the rate of $150 per hour, and Mr. Benitez billed at the rate of $125. (Doc. no. 75-1 at 30.)

The Court finds unreasonable the $150 hourly rate for MAL's paralegals Sotelo and Rizo, given that Benitez, who billed $125 per hour, has 30 years of relevant experience (doc. no. 75-2 at 17), while no such information is provided for Sotelo and Rizo (*see* doc. no. 75-3). The Court finds that $110 is a reasonable hourly rate for Sotelo and Rizo.

The foregoing professionals collectively billed 1,092.24 hours. (Doc. no. 75-1 at 30.) The case involved pre-filing investigation, extensive formal and informal discovery, including 17 depositions, witness interviews, production of voluminous payroll records, preparation of expert reports, analysis of payroll and other information regarding travel and waiting time, discovery motions, settlement negotiations, and drafting of joint motion for settlement approval. (Doc. no. 75-2 at 5-8.)

Plaintiff provided attorney and paralegal billing records in support of her lodestar. The fact that the records for MAL professionals were not summarized (*cf.* doc. no. 75-3 at 1-11; doc. no. 75-2 at 14-15), and that billing records were often not presented in chronological order (*see* doc. no. 75-2 at 44-60; doc. no. 75-3 at 18-32), rendered the review unnecessarily time consuming.

All billers to some extent included entries for administrative tasks, which should not have been billed and were excluded by the Court. The Court also excluded time which appeared excessive for the task or where the task was duplicated in another biller's time. In addition, MAL billers often engaged in block billing, which made the evaluation of their time unnecessarily difficult.[8] All billers frequently inadequately described their tasks, which was similarly difficult to evaluate. The Court excluded time if it was unclear how the task related to the case.

Rice was lead counsel since the inception of the case. She was present at most depositions, reviewed written discovery and document productions, initial disclosures and expert reports. (Doc. no. 75-2 at 5.) She billed a total of 341.1 hours to this case (*id.* at 49-60; doc. no. 75-1 at 30) after eliminating duplicative and clerical time and time spent on unsuccessful motions (doc. no, 75-2 at 14). She billed 15 hours, "spent performing mathematical calculations to determine payout amounts under the proposed Distribution Plan," at a reduced hourly rate of $250. (*Id.* at 15.) Notwithstanding these adjustments, upon review of her billing records, the Court finds that a total of 14 hours were spent on administrative tasks, duplication of effort and inadequately described tasks, or were excessive given the description of the task.

In addition to Rice, almost 18 hours were billed by MAL's attorneys Martinez and Lynch as senior and supervising attorneys. They did not exclude any

---

[8] "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945 n.2 (9th Cir. 2007) (internal quotation marks and citation omitted). This practice "makes it more difficult to determine how much time was spent on particular activities," may support a finding that the attorney failed to carry his or her burden and may therefore warrant a reduction to arrive at the reasonable number of hours. *Id.* at 948.

of their time. (*See* doc. no. 75-3 at 39-41.) MAL's declaration in support fees and costs says nothing about their involvement in the case, although their billing records were provided. (Doc. no. 75-3 at 39-41; *see id.* at 1-11.) Based on review of the records and given Rice's extensive relevant experience and day-to-day intimate involvement throughout the case, billing for two additional supervising attorneys was unreasonable.

Melton, a CLRA associate attorney, participated in most of the pre-filing case development, including client and witness interviews. He participated in drafting the complaint and drafted some of the initial discovery responses and requests. (Doc. no. 75-2 at 15-16.) He billed 53.3 hours (*id.* at 44-49; doc. no. 75-1 at 30) after eliminating time spent editing other attorney's drafts and responding to discovery addressed to Plaintiff Socorro Olivo de Vasquez, who had dismissed her claims prior to settlement (doc. no. 75-2 at 16). Notwithstanding these adjustments, which totaled 44 hours (*id.*), upon review of Melton's billing records, the Court finds that a total of 5.9 hours were spent on administrative tasks, duplication of effort and inadequately described tasks, or were excessive given the description of the task.

Walther, a MAL associate, was responsible for much of discovery, document review and analysis, and work with retained expert Aaron Woolfson, among other things. (Doc. no. 75-3 at 3, 18-32.) She billed 465.7 hours. (*Id.* at 18-32, doc. no. 75-1 at 30.) None of her time was adjusted. Upon review of her billing records, the Court finds that a total of 167.2 hours were spent on administrative tasks, duplication of effort and inadequately described tasks, or were excessive given the description of the task.

Serrano, another MAL associate, billed 44 hours to this case. (Doc. no. 75-1 at 30, doc. no. 75-3 at 35-38.) None of her time was adjusted. MAL's declaration in support of fees and costs does not describe her involvement, although her billing records were provided. (Doc. no. 75-3 at 35-38; *see id.* at 1-11.) Based on review

- 15 -

of the records, the Court finds that a total of 16 hours were spent on administrative tasks and duplication of effort.

Benitez, a CLRA paralegal, was involved in the pre-filing interviews and investigation, document review, gathering information for incorporation into discovery responses, and serving as a Spanish interpreter to Rice during client meetings and settlement conference. (Doc. no. 75-2 at 16-17.) Although he also worked with Melton in responding to discovery requests and factual development of the case, Plaintiff eliminated duplication by adjusting Benitez's hours by approximately 50%. (*Id.* at 16.) After adjustment, Benitez billed 92.8 hours to this case. (*Id.* at 37-44; doc. no. 75-1 at 30.) Nevertheless, upon review of the billing records, the Court finds that a total of 17 hours were spent on administrative tasks, duplication of effort and inadequately described tasks.

Sotelo, a MAL paralegal, billed 76 hours after excluding five hours. (Doc. no. 75-1 at 30; doc. no. 75-3 at 13-17.) MAL's declaration in support of fees and costs does not describe her involvement, although her billing records were provided. (Doc. no. 75-3 at 13-17; *see id.* at 1-11.) Based on review of the records, the Court finds that a total of 38.5 hours were spent on administrative tasks, duplication of effort and inadequately described tasks, or were excessive given the description of the task. The Court finds that 1.5 hours billed by MAL's paralegal Rizo are reasonable.

Based on the foregoing, the reasonable number of hours is 815.8. Accordingly, the lodestar amounts to $314,541.63.

After calculating the lodestar, the Court considers whether the total award so calculated is reasonable. *See PLCM Group*, 22 Cal.4th at 1095-96. In adjusting the lodestar, the court may consider: "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Id.* at 1096 (internal quotation marks and citation omitted).

The proposed settlement provides relief to Plaintiff individually, the LWDA and 582 Other Aggrieved Employees. The relief obtained is modest. The proposed settlement provides only approximately 9% of Other Aggrieved Employees' underpaid wages. The civil penalties on behalf of the LWDA are even more modest. (*See* doc. no. 75-2 at 9-12.)

Furthermore, despite Plaintiff's counsel's professed labor law expertise, the joint motion for settlement approval was less than expertly presented. Plaintiff's initial motion had to be supplemented due to failure to notify the LWDA of the settlement and material inconsistencies within the proposed settlement. (Doc. no. 72.) It was eventually denied without prejudice because the inconsistencies were not cured. (Doc. no. 74.) The pending motion cured the inconsistencies but inadequately addressed a key legal issue -- whether underpaid wages, liquidated penalties and waiting time penalties incurred by Other Aggrieved Employees constituted civil penalties under the PAGA. Although the most definitive case addressing this issue, *ZB, N.A. v. Super. Ct. (Lawson),* 8 Cal.5th 175, 196 (2019), was not published until after the motion was filed, a split among California appellate districts on the issue was apparent prior to filing. *See Esparza v. KS Indus., L.P.,* 13 Cal. App. 5th 1228 (2017); *see also ZB*, 8 Cal.5th at 184 (discussing *Thurman,* on which Plaintiff relied, and *Esparza*). Counsel did not mention the split in their motion, nor did they subsequently notify the Court that the issue was resolved contrary to the position they took in their briefing.

On the other hand, Plaintiff's counsel undertook representation on a contingency basis and invested significant time and effort in developing the case before and after its filing. The litigation presented a number of difficult and disputed legal and factual issues. (Doc. no. 75-2 at 6-8.) The gathering and analysis of payroll and travel records was understandably time consuming. The proposed settlement provides relief to seasonal farm workers who likely would not have sought it on their own. While this does not negate the counsel's lapses in

presenting the settlement to the Court, it counsels against a downward adjustment of the lodestar. Based on the foregoing, the reasonable amount of attorneys' fees expended on this case is $314,541.63.

### 2. **Costs**

In addition to attorneys' fees, Plaintiff also requests $38,828.39 for costs and litigation expenses.[9] The applicable statutes and the Amended Agreement provide for reasonable costs. Cal. Lab. Code §§ 2699(g)(1), 1194(a). (Doc. no. 76 at 10.)

CLRA requests reimbursement of $34,214.55 after excluding duplicative travel expenses. (Doc. no. 75-2 at 13.) CLRA's costs consist of $18,235.10 for deposition reporting and transcripts, $5,868 for court certified interpretation at depositions, $3,127.79 for travel expenses, $6,204.58 for expert witness fees, and $779.08 for filing, service and mailing.[10] The Court finds the foregoing costs reasonable.

MAL seeks reimbursement of $4,613.84, none of which appears to have been reduced. (Doc. no. 75-3 at 9, 43-49.) The request consists primarily of travel, food and lodging expenses associated with witness interviews and depositions. (Doc. no. 75-3 at 43-49.) The declaration in support of the request does not explain or summarize the costs. (*See* doc. no. 75-3.) To the extent attorney or paralegal time was excluded as duplicative, the associated costs are also excluded. In this regard,

---

[9] The parties request taxable costs such as filing fees, and non-taxable costs such as travel expenses. The proposed settlement does not distinguish between taxable and non-taxable costs (doc. no. 76 at 10; *see also id.* at 24), and the motion does not address the distinction (*see* doc. no. 75-1 at 30-31). Instead, the parties present an agreement to an overall amount. The Court therefore does not distinguish between taxable and non-taxable costs for purposes of the pending motion.

[10] CLRA and MAL do not provide any invoices in support of their requests. Such invoices are required to support larger line items, such as court reporting, expert witness fees, and larger travel expenses.

- 18 -

$2,594.89 of the requested costs were reasonably incurred. Accordingly, total reasonable costs amount to $36,809.44.

The proposed settlement provides for a total of up to $330,000 for reasonable attorneys' fees and costs combined. Because reasonably incurred fees and costs exceed this amount, the Court approves disbursement of $330,000.

## V. ORDER

The joint motion for approval of the amended settlement agreement (docs. no. 75, 76) is granted. Plaintiff's request for attorneys' fees and costs in the amount of up to $330,000 is granted. Attorneys' fees and costs are to be disbursed according to the procedure provided in the amended settlement agreement.

**IT IS SO ORDERED**.

Dated: November 25, 2019

_____
Hon. M. James Lorenz
United States District Judge